```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION

CARL D. CHILCUTT, et al.,    :    NO. 1:08cv116
                             :
           Plaintiffs,       :    OPINION AND ORDER
                             :
                             :
     v.                      :
                             :
FORD MOTOR COMPANY,          :
                             :
           Defendant.        :
```

This matter is before the Court on Defendant Ford Motor Company's Motion for Summary Judgment (doc. 35), Plaintiffs Carl D. Chilcutt and Pam Chilcutt's Memorandum in Opposition to Defendant's Motion for Summary Judgment (doc. 41), and Defendant's Memorandum in reply thereto (doc. 44). For the following reasons, the Court DENIES Defendant's Motion for Summary Judgment (doc. 35).

**I. BACKGROUND**

Plaintiff Carl Chilcutt ("Chilcutt")is a truck driver employed by Team Transit Incorporated ("Team Transit") and Plaintiff Pam Chilcutt is his wife; both are Indiana citizens (docs. 1 and 41). Defendant Ford Motor Company ("Ford" or "Defendant"), a Delaware corporation with its principal place of business in Michigan, hires Team Transit's truck drivers to empty dumpsters at the Ford Sharonville Transmission Plant ("the Plant")in Ohio and carry the contents of the dumpsters away (doc. 35).

On March 14, 2006, Chilcutt was instructed to drive a tractor-trailer carrying an empty dumpster to the Plant (doc. 41).

Once there, Chilcutt was to deposit the empty dumpster at the Plant, load a full dumpster onto his trailer, and haul the full dumpster away (Id.). Upon arrival at the Plant, Chilcutt unloaded the empty dumpster and then positioned his truck near the full dumpster to prepare to load it onto his trailer (Id.). Before Chilcutt could load the dumpster, he needed to cover it with a tarp (Id.). In the process of covering the dumpster, Chilcutt slipped on an oily substance and fell into an uncovered sump pit (Id.). During his fall, Chilcutt injured his knee and required two subsequent knee surgeries (Id.).

The sump pit is a four-by-four feet hole that Ford uses to collect oil, coolant, grease, and other substances from two nearby dumpsters (doc. 35). The substances drain into the sump pit from valves situated at the bottom of the dumpsters (Id.). Chilcutt claims that he was submerged in fluid up to his chest upon falling into the pit (doc. 41).

The pit itself is black in color (doc. 35). It is located at the end of a thirty feet by five feet concrete island that is elevated by 8 inches (Id.). A large (one hundred feet by sixty feet) gray concrete pad surrounds the pit (Id.). According to Plaintiffs, the concrete pad was covered in oil and other substances draining from the nearby dumpsters, making the pad indistinguishable from the sump pit because they appeared to be essentially the same color (doc. 41). Plaintiffs claim that the presence of the pit is

obscured by "numerous dumpsters" also located on the pad (Id.).

The sump pit is usually covered by a steel plate, four to five inches thick (doc. 35). The cover, when placed on top of the pit, is elevated 4 to 5 inches above the sump pit (doc. 44). However, in order to clean the sump pit, the cover must be removed (doc. 35). On the day of Chilcutt's accident, the sump pit was uncovered, and during the time of the accident it was not being cleaned (Id.). While the sump pit's cover was off that day, Chilcutt claims there was no warning of the missing cover, no attending employees, nor any guard railing placed along the uncovered pit (doc. 41).

Additionally, there is some factual confusion regarding the existence of a sign that was positioned near the sump pit at the time of Chilcutt's fall. Ford argues that a "6 feet tall bright sign" that described the presence of the sump pit nearby was located on the concrete island (doc. 35). However, Chilcutt claims that this sign did not exist prior to, nor at the time of, Chilcutt's accident, and claims that the sign was added to the concrete island after the incident occurred (doc. 41). Chilcutt also contends that the sign in question does not serve as a warning to the dangers of the sump pit, but only depicts its location (Id.).

During Chilcutt's work as a truck driver, he frequented the Plant three to four times a week over the course of a couple years (doc. 35). In that time, Chilcutt had also worked around the

dumpsters and pit in question two to three times per week, which, Defendant notes, means that he worked near the dumpsters and the pit an estimate of 200 to 300 times prior to the day of the incident (Id.). Additionally, Defendant avers that Chilcutt knew that the purpose of the sump pit was to collect oil and other runoff from the dumpsters and that the area around the pit was always oily and greasy (Id.). In their Complaint, Plaintiffs stated that to the best of Chilcutt's knowledge, the cover could only be removed for cleaning purposes (doc. 1). Chilcutt had never seen the pit uncovered prior to the day of his fall, and on each of his prior visits to the pit it had always been covered (doc. 41). On the day of the incident, Chilcutt did not notice the pit was uncovered until he was already falling backwards into it (Id.).

Basing this Court's jurisdiction on diversity of citizenship, Plaintiffs bring an Ohio-law negligence action against Ford, alleging that Chilcutt has suffered severe injuries as a direct and proximate result of Ford's negligence and that Pam Chilcutt has suffered both emotional distress and loss of consortium resulting from that negligence (doc. 1). Plaintiffs seek damages in excess of $75,000 (Id.). Defendant filed its Motion for Summary Judgment; Plaintiffs responded; and Defendant filed its reply. The matter is ripe for the Court's consideration.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact[.]"  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252;

see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**B. Ohio Negligence Law**

Plaintiffs claim that Defendant was negligent in failing to take adequate protection measures with regard to the uncovered sump pit located at the Plant and that Plaintiffs were injured as a result of Ford's negligence (doc. 1). Under Ohio law, in order to prevail in a negligence action, a plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. Robinson v. Bates, 857 N.E.2d 1195, 1201 (Ohio 2006). When the alleged negligence occurs in the premises-liability context, the applicable duty of care is determined by the relationship between the property owner and the plaintiff. Gladon v. Greater Cleveland Regional Transit Auth., 662 N.E.2d 287, 291 (Ohio 1996). Where the applicable relationship is one of property owner and business invitee, the property owner has a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. Light v. Ohio Univ., 502 N.E.2d 611, 613 (Ohio 1986). However, the owner or occupier of

property does not owe a duty to warn persons on that property of dangers that are open and obvious. Sidle v. Humphrey, 233 N.E.2d 589, 591-92 (Ohio 1968); Armstrong v. Best Buy Co., Inc., 788 N.E.2d 1088, 1089 (Ohio 2003)(the nature of the open and obvious hazard itself serves as the warning).

As a business owner, Defendant, therefore, generally has a duty to maintain the Plant in a reasonably safe condition so that business invitees, such as Chilcutt, are not unreasonably exposed to danger. See Paschal v. Rite Aid Pharmacy, Inc., 480 N.E.2d 474, 475 (Ohio 1985). Defendant's general duty to protect its invitees falls away, though, when the danger is known to the invitee or is so obvious that the invitee may reasonably be expected to discover it and protect himself against it. Id. According to the Ohio Supreme Court, the question of whether a duty exists is a question of law for the Court to decide. Mussivand v. David, 544 N.E.2d 265, 318 (Ohio 1989). However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine. Carpenter v. Marc Glassman, Inc., 705 N.E.2d 1281, 1283 (Ohio Ct. App. 1997).

The questions before the Court here are (i) whether Plaintiffs have established negligence per se, thereby establishing duty and breach and, if not, (ii) whether reasonable minds could differ about whether the danger of the pit was known to Chilcutt or whether it was so obvious that he may reasonably have been expected

to discover the danger himself and take measures to protect himself from the pit.

### 1. Defendant's Motion for Summary Judgment

Defendant argues that the Court must find the pit to be an open and obvious danger because (i) Chilcutt was familiar with the pit and the surrounding area as he had made hundreds of trips to that area over the course of two years; (ii) he had actual knowledge of the uncovered pit and the slippery conditions surrounding it because Plaintiffs' Complaint contains a statement that Chilcutt assumed the pit would be uncovered for cleaning; (iii) the uncovered pit was easily observable by Chilcutt, and he simply failed to look; and (iv) the pit's black color contrasted with the gray concrete pad surrounding it, which made the pit noticeable (doc. 35).

### 2. Plaintiffs' Opposition Thereto

Plaintiffs argue in response that the uncovered, unguarded and unattended pit placed Ford in violation of at least two OSHA regulations, and Plaintiffs contend that these violations constitute negligence per se on Ford's part (doc. 41). Should the Court disagree, Plaintiffs argue in the alternative that reasonable minds could disagree about whether the pit was open and obvious, thus summary judgment is inappropriate (Id.). Specifically, they note that Chilcutt had never seen the pit uncovered on any of his hundreds of trips to the Plant and he therefore had no reason to

assume it would be uncovered on the day in question; that given the size of the normal plate cover, it appeared to be a permanent fixture rather than a removable cover, and Chilcutt had no reason to know that it could be or would be removed; that the normal plate covering was the same color as the concrete pad surrounding it, and both were normally covered in the same oily substance, making it difficult to observe the cover's absence; that there was nothing to alert Chilcutt to the fact that the pit was uncovered; and that Chilcutt's attention was focused on his work, not on the possibility of open pits, and the attendant circumstances of the use of the heavy tarp and the oil-covered ground preclude a finding of obvious danger (Id.).

### 3. Defendant's Reply

In its Reply, Defendant argues that any allegations of OSHA violations are irrelevant both because OSHA standards relate only to employees and not to independent contractors like Chilcutt and because the Ohio Supreme Court has held that OSHA violations do not establish negligence per se and therefore do not preclude the application of the open and obvious doctrine (doc. 44., citing Hernandez v. Martin Chevrolet, Inc., 649 N.E.2d 1215, 1217 (Ohio 1995)). In addition, Defendant argues that Plaintiffs cannot establish these alleged OSHA violations because the OSHA regulations to which Plaintiffs cite do not apply to the sump pit and

surrounding area at the Plant (Id.).[1]

Defendant further contends that Chilcutt's affidavit stating that he had no knowledge that the pit's cover could be removed is in direct contradiction to Plaintiffs' Complaint, where Plaintiffs alleged that "to the best knowledge of [Chilcutt] the lid to the pit was always on unless the pit was being cleaned" (Id.). Arguing that Plaintiffs are bound by the facts and allegations in their Complaint, Defendant asserts that Chilcutt had actual knowledge that the area surrounding the pit would be slippery and that the pit's cover would be removed when it was being cleaned (Id., citing Gerrick v. Gorsuch, 178 N.E.2d 40(Ohio 1961)). Defendant contends that any attempt to argue that Chilcutt was unaware of the existence of the pit is disingenuous because of Chilcutt's familiarity with the Plant and that the sign indicating the layout of the area reinforced that awareness (Id.). In addition, Defendant contends that nothing blocked Chilcutt's view of the open pit; he simply failed to look (Id.). Finally, Defendant contests Plaintiffs' attendant circumstances argument, arguing that Chilcutt's routine use of the fifty pound tarp to cover dumpsters and the fact that he routinely worked on the slippery surface were

---

[1] Because the Court finds that Plaintiffs have created a genuine issue of material fact with respect to the obviousness of the danger created by the pit irrespective of any OSHA violations, the Court need not reach the issue of whether the two OSHA regulations cited by Plaintiffs are applicable to the situation presented by the outdoor sump pit.

"work regulations" and pointing to an Ohio appeals court case for the proposition that work regulations cannot constitute attendant circumstances (Id., citing Melvin v. Badger School Dist. Bd. of Educ., 2007 WL 4225666 (Ohio Ct. App. 2007)).

**C. Negligence per se**

Defendant correctly notes that the Ohio Supreme Court has interpreted the Occupational Safety and Health Act to mean that violations of OSHA regulations do not constitute negligence per se because, the court found, Congress did not intend regulations issued pursuant to that Act to affect the duties employers owe to employees injured during the course of their employment. See Hernandez, 649 N.E.2d at 1217. Defendant argues that evidence of OSHA violations cannot be used as mere evidence of duty and breach either because, it reasons, to use violations of OSHA as evidence of duty and breach would "affect" the duty of an employer towards its employees contra the Ohio Supreme Court's reasoning in Hernandez (doc. 44).

However, the Hernandez court's holding spoke only to the use of OSHA violations to establish negligence per se, and the Court does not construe Hernandez to preclude the use of such violations as evidence of duty and breach. Cf. Lang v. Holly Hill Motel, Inc., 909 N.E.2d 120, 125 (Ohio 2009)(holding that building code violations do not establish negligence per se and stating "While a violation of the Building Code may serve as strong evidence that the condition at issue was dangerous and that the landowner breached the

-13-

attendant duty of care by not rectifying the problem, the violation is mere evidence of negligence and does not raise an irrebuttable presumption of it"). If the Ohio Supreme Court had wanted to reach that far, it certainly could have, but it did not. Its discussion is limited to the negligence per se doctrine, and this Court feels that to use OSHA violations as evidence of duty or breach is quite different from the presumption of duty that negligence per se imposes. However, the Court does find Defendant's arguments with respect to the use of OSHA violations to establish negligence per se persuasive and therefore finds that, under Ohio law, Plaintiffs may not rely on any OSHA violations to establish negligence per se but may, as applicable, use such violations as evidence of duty and/or breach.

Defendant also argues that any application of OSHA to this case is inappropriate because OSHA regulations do not apply to independent contractors but only to employers and employees, and it is undisputed that Chilcutt was an independent contractor (doc. 44). It is true that OSHA does not create a private cause of action; indeed, "OSHA regulations can never provide a basis for liability." Ellis v. Chase Communications, Inc., 63 F.3d 473, 476 (6th Cir. 1995). Defendant must therefore have owed Chilcutt a duty under a theory of liability independent of OSHA. Plaintiffs have asserted that Defendant owed Chilcutt a duty as a business owner and have not premised liability on OSHA, and the Court is not persuaded by

Defendant's arguments with respect to Chilcutt's status as an independent contractor.

### D. Duty

If the open and obvious doctrine is applicable to this case, it will obviate Defendant's duty to warn and act as a complete bar to recovery. Armstrong, 788 N.E.2d at 1088. The Court finds that reasonable minds could differ on the obviousness of the danger presented by the pit and therefore finds the issue of whether Defendant had a duty to Chilcutt to be a matter for the jury.

In reaching this conclusion, the Court notes that Chilcutt's familiarity with the surroundings is both an argument for the obviousness of the danger and the lack thereof. Chilcutt could simply have been so used to seeing the pit covered, because it had been every other time of the hundreds of times he had been to the Plant, that it did not occur to him that it would not be covered on the day in question and that he should look. Defendant argues that Plaintiffs' statement in the Complaint regarding Chilcutt's knowledge that the pit could be uncovered somehow definitively proves actual knowledge that the pit was uncovered on the day in question. This simply assumes too much. Even if the statement in the Complaint is binding and is construed as Defendant desires, it does not speak to Chilcutt's knowledge of the pit on the day in question. In addition, no evidence suggests that Ford took any steps that would indicate to its invitees that the pit would be

cleaned that day, let alone that in the cleaning it would be uncovered. Further, even if Chilcutt had glanced down, the evidence suggests that reasonable minds could find that the color of the covered pit, as it was generally covered in oil, was not distinct enough from the uncovered pit, which was nearly full of oil, such that a reasonable person could only come to the conclusion that it was obvious. Finally, whether or not the sign was present on the day in question and whether, if present, it would have provided notice of the danger of the open pit are issues for the jury to factor into its deliberations regarding both the duty and breach elements of the tort.

As to the attendant circumstances, to the extent this exception to the open and obvious doctrine is applicable, the Court is unpersuaded by Defendant's attempt to dispense with the distracting nature of Chilcutt's heavy tarp and the oily work conditions. Although there is no precise definition of the term, Ohio courts have found that attendant circumstances include any distraction that would divert the attention of someone in the same circumstances and thereby reduce the amount of care an ordinary person would exercise. McGuire v. Sears, Roebuck and Co., 693 N.E.2d 807, 810 (Ohio Ct. App. 1996). Such circumstances are, in short, all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event. See, e.g., Cash

v. Cincinnati, 421 N.E.2d 1275 (1981).

Defendant argues that Melvin v. Badger School Dist. Bd. of Educ., 2007 WL 4225666 (Ohio Ct. App. 2007) is analogous to this case. In Melvin, the plaintiff was a letter carrier who tripped on the sidewalk and suffered serious injuries. Id. at *1. At the time of her fall, she was carrying six to twelve letters and her keys and, as required by postal regulations, had her eye on her mail truck. Id. She argued unsuccessfully that these facts were attendant circumstances, which negated the obviousness of the danger of the cracks in the sidewalk. Id. Here, wrestling with a fifty pound tarp may be part of Chilcutt's job when he services the Plant, but it is not a work regulation, and it is much different from holding a few letters and car keys. There are countless ways one could go about covering the dumpster, and no evidence suggests that Chilcutt was required by his employer to do it only one way. In fact, he may have done it differently every time. The question is whether wrestling with such a tarp on a slippery surface covered with oil created a distraction such that a reasonable person in the same circumstances would have reduced the amount of care he exercised. The Court finds that reasonable minds could disagree on this issue.

For the foregoing reasons, viewing the evidence in the light most favorable to Plaintiffs, the Court finds that a genuine issue of material fact exists with respect to the duty owed by

-17-

Defendant to Chilcutt.

### E. Breach & Causation

Defendant focused on the duty element in its briefing and did not produce evidence demonstrating the absence of a genuine issue of material fact with respect to the elements of breach and causation.

### III. Conclusion

For the foregoing reasons, the Court finds that summary judgment would not be appropriate and therefore DENIES Defendant's Motion for Summary Judgment and SETS a status conference for November 19, 2009 at 11:00 a.m.

SO ORDERED.

Dated:   October 6, 2009        /s/ S. Arthur Spiegel

                                         S. Arthur Spiegel
                                         United States Senior District Judge